

Office of the State's Attorney for Baltimore City
120 East Baltimore Street
Baltimore, Maryland 21202

MEMORANDUM

ATTORNEY WORK PRODUCT
PRIVILEGED

**To:** Stacy Ann Llewellyn, Chief – Police Integrity Unit

**From:** Kent Grasso, ASA

**CC:** Cynthia Banks, MiaBeth Marosy

**Date:** January 12, 2016

**Re:** Det. Jemell Rayam re: State v. Gary Clayton, 115124016

---

Cynthia asked that I provide you with a summary of what transpired regarding Det. Rayam in State v. Gary Clayton, 115124016, where Judge Barry Williams granted defense's motion to suppress the search warrant during a Franks hearing.

Defense counsel Staci Pipkin initially filed a motion requiring BPD to turn over Det. Rayam's IID file based on the State's integrity-related disclosure. On November 10, 2015, this matter was before Judge Kendra Ausby, acting as Pt. 46 reception court. Judge Ausby heard the motion and, after hearing from counsel and Brent Shubert from BPD Legal, denied the motion. The case was then sent to Judge Williams for trial.

Before Judge Williams, counsel requested a Franks hearing (motion attached), alleging that Det. Rayam's reported observation of CDS in plain view in an apartment was intentionally or recklessly false and that, absent this observation, the search warrant was insufficient.

The Franks hearing took place on November 12, 2015. At its conclusion, Judge Williams agreed with defense counsel and suppressed the warrant, finding that Det. Rayam intentionally included false statements in the affidavit and demonstrated a reckless disregard for the truth. Judge Williams then found that the remaining evidence in support of the warrant was insufficient to establish probable cause.

There were a number of credibility issues that Judge Williams raised with respect to Det. Rayam's testimony about the incident. Critically, Judge Williams did not believe Det. Rayam's

**EXHIBIT 3**

testimony regarding his observation of CDS in plain view in the defendant's apartment he shared with girlfriend Kimberly Demory. Det. Rayam's reports and testimony indicated he opened an unlocked exterior door to Ms. Demory's apartment, then rang her apartment doorbell, at which point she opened her door and the drugs were visible in plain view behind her. Defendant and Ms. Demory testified that the officers were outside the exterior door and that she never let them in after Mr. Clayton yelled for her to close the door because the police did not have a warrant. (Ms. Demory also provided a sworn affidavit – see attached). The officers, according to Mr. Clayton, forced their way in the exterior door and then opened the interior door with Mr. Clayton's key. Based on the testimony of the witnesses and photographs of the location, Judge Williams did not find Det. Rayam's version of events to be credible.

There were numerous other issues raised by Judge Williams. He found Det. Rayam's testimony regarding Ms. Demory's supposed efforts to conceal the CDS in plain view to be inconsistent from his description in the search warrant. He also found it concerning that a glass plate covered in suspected heroin residue – the supposed CDS in plain view – was never recovered. Judge Williams also expressed doubts about the events leading up to the incident at the apartment. Det. Rayam indicated in his warrant that, while investigating Mr. Clayton, he observed a suspected drug transaction. Det. Rayam did not stop either Mr. Clayton or the buyer and did not know the precise date on which this occurred. He also did not describe the suspected bag of CDS with any specificity, but while testifying said he observed approximately 50 green top vials that matched vials later found in Mr. Clayton's car during a car stop and then in Ms. Demory's apartment.

The car stop that began this incident was also a point of contention. Det. Rayam testified that he conducted a pretextual traffic stop because he received information from a CI that D had a gun and drugs in his car, and knew Mr. Clayton didn't have a license. No guns or drugs were recovered during the stop, but Det. Rayam stated that there were empty green top vials recovered on the driver's side floor. Clayton denied this, and Judge Williams noted that Det. Rayam never issued a ticket for any traffic offense, never called in the stop and received a CC #, never towed the vehicle, and never submitted the empty vials to ECU. Rayam contends that he did submit the vials to ECU, but grouped all the recovered vials together such that there was no way to distinguish what was recovered from the vehicle from what was later recovered from the apartment.

Judge Williams was also skeptical of Det. Rayam's testimony that he "detained" but did not "arrest" Mr. Clayton after the car stop, yet placed him in handcuffs, spoke with him, and drove him a half mile to the apartment where they encountered Ms. Demory.

Throughout the hearing, Judge Williams was visibly skeptical and critical of Det. Rayam's testimony. At the conclusion, I argued that this incident was an example of sloppy police work, but not intentionally false statements or reckless disregard for the truth. Unfortunately, Judge Williams found otherwise.

2